# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRACIE BAKED LLC, WECARE RG, INC., and MILLERCOBB LLC, on behalf of themselves and all others similarly situated, | CIVIL ACTION |
| Plaintiffs, | Miscellaneous Case No. 2:24-mc-00071-PD |
| v. | Underlying Case: *Gracie Baked LLC et al. v. GiftRocket, Inc. et al.*, No. 1:22-cv-04019-RPK-VMS (E.D.N.Y. 2022) |
| GIFTROCKET, INC., TREMENDOUS, INC., NICOLAS BAUM, KAPIL KALE, JONATHAN PINES, BENJAMIN KUBIC, SUNRISE BANKS, N.A., GIFTROCKET, LLC, TREMENDOUS LLC, and TREMENDOUS PARENT, INC., | |
| Defendants. | |
| v. | |
| MARY BUCHNIK and ANNA NUKHBALAIEVA, | |
| Subpoenaed Parties. | |

## COMBINED (1) RESPONSE TO ORDER TO SHOW CAUSE, (2) MOTION TO TRANSFER PURSUANT TO FRCP 45(f), (3) OPPOSITION TO THE GIFTROCKET DEFENDANTS' MOTION TO COMPEL, AND (4) CROSS MOTION TO QUASH

# Table of Contents

Introduction .................................................................................................1

Background....................................................................................................4

    I.     The Underlying Litigation ..................................................4

    II.    Judge Scanlon Rejects Defendants' Arguments and Instructs the Parties to Try to "Work it out" Without Court Intervention................6

    III.   The Non-Party Witnesses Possess Extremely Limited Knowledge of the Litigation, and There is No Conflict of Interest .............................................................................10

Legal Standards ........................................................................................12

Argument....................................................................................................14

    I.     The Non-Party Witnesses Acted Reasonably to Comply with the Subpoena and Have Good Cause to Excuse Any Noncompliance .................................................................14

    II.    The Court Should Transfer the Motion Back to Judge Scanlon........16

    III.   In the Alternative, the Court Should Quash the Subpoenas ...............18

        A.     The Non-Party Witnesses' Request to Quash is Timely .........19

        B.     The Subpoenas Should Not Be Enforced ................................20

        C.     The Court Should Order Defendants to Pay for this Opposition .................................................................24

Conclusion....................................................................................................25

# Table of Authorities

## Cases

*Avago Techs. U.S., Inc. v. IPTronics Inc.*,
   309 F.R.D. 294 (E.D. PA. 2015) ............................................................ 13, 20, 21

*Feltman v. Granite State Ins. Co.*,
   2008 WL 630282 (Bankr. D.N.J. Mar. 5, 2008) .................................... 15

*Frank v. Honeywell Int'l Inc.*,
   2015 WL 4770965 (E.D. Pa. Aug. 13, 2015) ........................................ 21

*Garcia v. Winters*,
   2023 WL 5644655 (E.D. Pa. Aug. 31, 2023) ........................................ 15

*Gordon v. Houghton Mifflin Harcourt Pub. Co.*,
   2015 WL 3871788 (E.D. Pa. June 23, 2015) ........................................ 24

*Green v. Cosby*,
   216 F. Supp. 3d (E.D. Pa. 2016) .......................................................... 18

*Hall v. Marriott Int'l Inc.*,
   2021 WL 3129598 (N.D. Cal. July 23, 2021) ...................................... 16

*HI.Q, Inc. v. ZeetoGroup, LLC*,
   2022 WL 17345784 (S.D. Cal. Nov. 29, 2022) ....................................

*In re Coan*,
   2007 WL 128010 (N.D. Cal. Jan. 12, 2007) ........................................ 15

*Innomed Labs, LLC v. Alza Corp.*,
   211 F.R.D. 237 (S.D.N.Y. 2002) .......................................................... 15

*James v. Runyon*,
   1993 WL 173468 (N.D.N.Y. May 17, 1993) ........................................

*Meijer Inc. v. Ranbaxy Inc.*,
   2017 WL 2591937 (E.D. Pa. June 15, 2017) ........................................ 17

*Melbourn v. Wal-Mart Stores, Inc.*,
   2020 WL 1470850 (E.D. Pa. Mar. 26, 2020) ........................................ 24

*Palazzo ex rel. Delmage v. Corio*,
   204 F.R.D. 639 (E.D.N.Y. 1998) .......................................................... 23

*Pandora Media, LLC v. Word Collections, Inc.*,
   2023 WL 9378653 (S.D.N.Y. Oct. 5, 2023) ........................................ 18

*Pennsylvania by Shapiro v. Think Fin., LLC*,
   2018 WL 4635750 (E.D. Pa. Sept. 26, 2018) ......................................

*PharmaCare U.S., Inc. v. Season 4, LLC*,
   2024 WL 2301407 (D.N.J. May 21, 2024) .......................................... 16

*San Juan Cable LLC v. DISH Network LLC*,
   2015 WL 500631 (D. Colo. Jan. 23, 2015) .......................................... 16

*Schwartz v. Marriott Hotel Servs., Inc.*,
  186 F. Supp. 2d 245 (E.D.N.Y. 2002) ................................................................23
*Snyder v. Dietz & Watson, Inc.*,
  2013 WL 12155425 (D.N.J. Jan. 30, 2013) ........................................................12
*United States ex rel. Simpson v. Bayer Corp.*,
  2016 WL 7239892 (E.D. Pa. Dec. 15, 2016) .....................................................18
*Universitas Educ., LLC v. Nova Grp., Inc.*,
  2013 WL 57892 (S.D.N.Y. Jan. 4, 2013) ...........................................................22
*Winston & Strawn LLP v. Janssen Prods., L.P.*,
  2022 WL 3359564 (S.D.N.Y. Aug. 12, 2022) ....................................................16

**Statutes**

28 U.S.C. § 1927 ...........................................................................................................25

**Rules**

Fed. R. Civ. P. 45 ...............................................................................................passim
Fed. R. Civ. P. 45 Advisory Committee's Notes to 2013 Amendment ............13, 17

## INTRODUCTION

There is no merit to the GiftRocket Defendants' accusation that non-parties Anna Nukhbalaieva and Mary Buchnik "simply disregarded" subpoenas or "refus[ed] to show up for a deposition." Doc No. 1-1 ("Mot.") at 7, 9. They did the exact opposite, engaging in extensive discussions and emails with the GiftRocket Defendants for months to schedule these depositions on reasonable terms. The witnesses also raised objections to these depositions at two separate hearings with Magistrate Judge Scanlon, who has been actively presiding over numerous discovery disputes in the underlying litigation for over two years. Most recently, these subpoenas were discussed at a December 4 hearing where everyone agreed that the depositions would not go forward on December 6. At that hearing, Judge Scanlon also rejected certain arguments raised in Defendants' motion here and instructed the parties to try to "work out" the remaining issues between themselves.

Defendants ignored Judge Scanlon's orders, just as they have ignored their obligations under Fed. R. Civ. P. 45(d)(1) to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Instead, Defendants ask this Court to force multiple witnesses to travel to downtown Philadelphia for short depositions—even though the GiftRocket Defendants deposed nearly every other witness remotely and cannot explain why these witnesses must be deposed in person without resorting to arguments Judge Scanlon already rejected.

1

The GiftRocket Defendants' motion completely fails to mention that when Defendants rejected the reasonable compromise of having the depositions occur as noticed (three in one day), but at a location that was convenient for the witnesses or remotely, Plaintiffs again raised their concerns about the subpoenas to Judge Scanlon, in a December 2, 2024 filing. *See* Doc No. 215 at 8 *in Gracie Baked LLC et al. v. GiftRocket, Inc. et al.*, No. 1:22-cv-04019-RPK-VMS (E.D.N.Y. 2022) ("*GiftRocket Litigation*"), Ex. A to Janove Decl. (The subpoenas had already been discussed at an October 17, 2024 status conference, where Plaintiffs raised the issue to make sure that the November 1, 2024 date in the original subpoenas would be rescheduled and to avoid unnecessary disputes about non-compliance. *See* Oct. 17 Hearing Transcript at 24, Ex. B to Janove Decl.)

Defendants also do not mention that the parties then discussed the subpoenas again with the Court on December 4, 2024, and it was clear to all parties that the depositions would not proceed on December 6, 2024; defense counsel stated that they no longer wished to "stack all three [witnesses] in the same day," and Judge Scanlon told the parties to try to "work out" the dispute without further motion practice. *See* Dec. 4 Hearing Transcript, Ex. C to Janove Decl. at 32:16-19, 34:23-35:05. At that hearing, Judge Scanlon specifically asked about the non-party witnesses' preferences for the depositions and whether "they want to do the deposition by Zoom." *See id*. at 27:3-6.

2

The Judge also expressly rejected Defendants' arguments about a supposed conflict of interest and their position that "it's not fair" to have remote depositions for non-parties unless Plaintiffs agree that all remaining defense depositions will be taken remotely. *See id*. 34:03-11. Judge Scanlon entered an order following the hearing reiterating that the Parties should attempt to "reach a resolution as to their dispute" about the subpoenas, and that the "potential conflict raised by the GiftRocket Defendants . . . does not appear to be a live conflict." Dec. 4 Order at 9:08 pm ET, Ex. D. to Janove Decl. at 3.

The non-parties therefore reasonably expected that Defendants would attempt further negotiations concerning the subpoenas, guided by Judge Scanlon's rulings. Defendants filed this motion instead. The Court should put an end to Defendants' forum-shopping and transfer this matter to Judge Scanlon, who is well-versed in the underlying lawsuit and the instant dispute, including through extensive discovery motion practice on related topics and rulings on matters Defendants seek to relitigate in their motion. She also already recognized that if Defendants insisted on filing their motion here, there was a good chance it would be returned to her. *See* Ex. C at 30:15-21 (THE COURT: …you know, you want to do this in Philadelphia, which is fine, although maybe the judge will kick it here. You run the risk of running out of time for all the procedural maneuvering with your hoped-for witness. So it might make sense for you all to come to an agreement about it.").

3

In the event the Court decides to address the merits, it should reject Defendants' arguments, quash the subpoenas, and award the non-parties' attorney's fees and costs. The non-parties have attempted to comply with these subpoenas, and timely raised their objections with the presiding magistrate judge. At the December 4 hearing, Defendants represented to the Court that the depositions would not go forward as noticed, so there is no basis for their claim of non-compliance. To the extent an adequate, good-faith excuse for not appearing on December 6 is needed, the non-parties reasonably believed, based on the parties' discussions with the Court at the December 4, 2024 hearing and that Court's December 4 orders, that the parties were to engage in further negotiations before filing any motions concerning these subpoenas. There is no reason to reward Defendants for ignoring Judge Scanlon's orders, generating unnecessary motion practice in multiple fora, and asking this Court to revisit issues because Defendants did not like Judge Scanlon's rulings.

## BACKGROUND

### I.  The Underlying Litigation

On July 8, 2022, the Plaintiffs filed their first complaint against certain GiftRocket Defendants. *See* Doc. No. 1 in the *GiftRocket Litigation*. Following a corporate reorganization by the GiftRocket Defendants, the Plaintiffs filed the operative version of the complaint, the Second Amended Class Action Complaint. *See* Doc No. 137, in the *GiftRocket* Litigation, ("SAC") ¶¶ 214–23. The SAC spans

4

94 pages, asserts five causes of action, and seeks to certify a nationwide class as well as subclasses in New York, Pennsylvania, and Texas.

As alleged in the SAC, the GiftRocket Defendants run www.GiftRocket.com, a website that falsely advertises the sale of "gift cards" to specific businesses, including those of the Plaintiffs, without their consent. Defendants' website is deliberately structured so that customers who search for the name of a specific business, often in conjunction with the phrase "gift card," will find search results falsely stating: "Buy a gift card to [specific business]," and be directed to the GiftRocket website. However, GiftRocket does not sell gift cards to the businesses it lists (without their authorization) as "suggested businesses" on its website. Instead, if the recipient of the "gift card" reads the fine print, they'll realize they did not receive an actual gift card to the business named on the "card," but instead have to follow instructions to receive a cash transfer, which may require them to give the GiftRocket Defendants' their private bank account information.

These tactics have confused thousands of customers about the affiliation between businesses listed on the GiftRocket.com website and the GiftRocket Defendants, and diverted funds intended for the proposed class. In addition, thousands of businesses have demanded to be removed from the website or threatened legal action, multiple state attorneys general have raised complaints to the company, and a law enforcement agency has published a "scam alert" to "warn

citizens about fraudulent gift card scam." The proposed class action raises Lanham Act claims and related unfair competition common law and statutory claims.

## II.  Judge Scanlon Rejects Defendants' Arguments and Instructs the Parties to Try to "Work it out" Without Court Intervention

The non-party witnesses have little or no information concerning the claims at issue in this litigation, as detailed below. Further, what little information they do possess has already been provided in documents and Rule 30(b)(6) testimony of Plaintiff WeCare. Even though there is no reason for these depositions to occur at all, Plaintiffs attempted in good faith to arrange for Defendants to quickly confirm these witnesses' lack of relevant knowledge, recognizing that short depositions in a convenient location would ultimately impose less burden than extensive motion practice.

Until recently, every deposition taken in this case to date occurred remotely, or at a location that was chosen by the witness, consistent with Judge Scanlon's instructions to "work out th[e] schedule" for depositions in this case, including using remote depositions to facilitate scheduling. *See* Aug. 28, 2024 Hearing Transcript. at 19:14-19:22, Ex. E to Janove Decl. (In fact, the only in-person deposition taken by Plaintiffs was of Defendants' CEO and founder, who opted to appear at the noticed address when offered the opportunity to choose the location.)

Defendants have already taken the Rule 30(b)(6) depositions of the named Plaintiffs and their managing members. All of these depositions were conducted remotely, by agreement of the parties. The GiftRocket Defendants then noticed the depositions of non-parties Anna Nukhbalaeiva and Mary Buchnik, as well as Plaintiff WeCare RG Inc. partial-owner Daniel Buchnik (who was ultimately deposed on December 10). The deposition notices set all three depositions on the same day, at 9:00 am, 12:00 pm, and 3:00 pm. Initially, the GiftRocket Defendants noticed these depositions to occur in Philadelphia. They then reissued the subpoenas to have the location be in New York, and then changed their mind again and switched the location back to Philadelphia. *See* Janove Decl. Ex. A at 8–11. Defendants state the switch to New York was done "so that any motion to compel would be filed in the same district court where the New York Action was pending," Mot. n.3. But they do not explain why they switched back to Philadelphia and now insist the matter should be heard by this Court instead.

To comply with the subpoenas and avoid unnecessary motion practice, the three witnesses offered a date and a location reasonably convenient to all of them to be deposed in quick succession. However, the GiftRocket Defendants refused to take them there or remotely—instead threatening sanctions and motions to compel in multiple jurisdictions unless the witnesses appeared at the GiftRocket Defendants' preferred location. As noted above, counsel timely raised objections to the subpoena

7

to the Magistrate Judge presiding over this case, both at an October 17, 2024 hearing when the deposition notices had a November 1, 2024 date, and again at a December 4, 2024 hearing before the December 6 date. In both instances, all parties agreed before the Court that the depositions would not go forward on the noticed date.

Notably, at the December 4 hearing, Judge Scanlon asked whether these non-party witnesses preferred remote depositions, indicating these depositions could be taken remotely. *See* Ex. C. at 27:3-6 ("So with regard to the non-party witnesses, do they have some association with the business? Did they want to do the deposition by Zoom? Or what is it that they're looking for?"). The Judge then made clear that remote depositions were acceptable and should be considered, rejecting defense counsel's argument that it's "just not fair" for non-parties to be deposed remotely and emphasizing that non-party witnesses are subject to "different considerations":

> [Defense counsel]: And I would just reiterate that if our witnesses, meaning the defense witnesses, must appear in person, I would ask the Court to make clear that it cannot be the case that plaintiffs insist on remote depositions but refuse to take them of our witnesses.
>
> THE COURT: All right. I'm not –
>
> [Defense counsel]: It's just out of the spirit of fairness. It's just not fair, your Honor.
>
> THE COURT: It's not, it's not. That's not how this is going to work. You know, the parties and the non-parties are different. There are different considerations for different witnesses.

*See id.* at 33:22-34:11; *see also id.* at 33:9-12 (with respect to deposing party-witness Mr. Buchnik, stating: "I hope you can come to an agreement as to doing this. You know again, Zoom being -- you know, if there's not a date for doing it in person then do it remotely.").

At the December 4 hearing, Judge Scanlon also specifically instructed the parties to make further efforts to "work out" these matters. After, Judge Scanlon then reiterated her instructions for the parties to "work it out":

> I'm also telling you all that ***you really need to work out*** the dates for these witnesses. And if you get into motion practice over this in Pennsylvania, then maybe it'll move quickly. . . . And it's not going to be a reason to extend the discovery schedule. ***So you know, work it out***.

*See* Ex. C at 34:25-35:5 (emphasis added).

That same day, later in the evening, Judge Scanlon issued an order repeating her instruction and expectation that the Parties would attempt to work out scheduling these depositions:

> As to the issues raised in relation to the two non-party witnesses, ***if the parties cannot reach a resolution*** as to their dispute ***and must commence*** related motion practice in the Eastern District of Pennsylvania, unresolved motion practice will not be a sufficient reason to justify an extension of time to complete discovery.

Janove Decl. Ex. D at 3 (emphasis added):

But Defendants did not even contact undersigned counsel about attempting to schedule depositions after the December 4 hearing and order. They instead just filed

9

their motion here in the hopes of getting a better result than what they received from Judge Scanlon.

### III.    The Non-Party Witnesses Possess Extremely Limited Knowledge of the Litigation, and There is No Conflict of Interest

The non-party witnesses have extremely limited knowledge on issues relevant to the underlying litigation. Anna Nukhbalaieva, who purchased the Café Ole in the Valley restaurant from Plaintiff WeCare RG, Inc. in May 2024, has never had any interest or intention of buying WeCare's litigation claims or becoming involved in this litigation. Nukhbalaieva Decl. ¶ 11. Her declaration in support of this filing corroborates the testimony already given by Mr. Kalikhman, an owner of WeCare in both his personal capacity and as a 30(b)(6) witness, that all parties to the APA understood and agreed that the litigation claims would be retained by WeCare. The fact that Defendants—who are strangers to the APA—wish to impose a different interpretation on the parties' agreement is not a reason why Ms. Nukhbalaieva should be subject to an undue burden and be forced to find coverage and spend a day away from her newly-acquired business. *See* Nukhbalaieva Decl. ¶ 14.

In addition, at the December 4 hearing and in the order entered the same day, Judge Scanlon already explicitly rejected Defendants' argument that there is "an actual conflict of interest" here to suggest that Ms. Nukhbalaieva is being "unduly influenced." Mot. at 10, n.8; *see* Ex. D at 3 ("Additionally, the issue as to a potential

10

conflict raised by the GiftRocket Defendants in Plaintiffs' counsel's representation of Plaintiff WeCare RG, Inc. and Anna Nukhbalaieva in relation to the purchase agreement at issue does not appear to be a live conflict, in view of the agreement between Plaintiff WeCare RG, Inc. and Anna Nukhbalaieva as to the interpretation of the purchase agreement."); *see also* Ex. C at 39:4-14 ("Look, in terms of this deposition, the fact that the defendants envision that there's a conflict with the plaintiff and the other parties don't believe there's a conflict and they have a mutual understanding of the significance of their agreement, then there is not a conflict at this point. . . . But I don't see this as an issue to slow down the work or compromise the representation of either of these folks.").

Defendants' new argument that Ms. Nukhbalaieva has "knowledge about the valuation of Café Ole in the Valley's assets that were transferred," *see* Mot. at 4, is not a reason to depose her either. Her knowledge about the valuation of assets transferred has no relevance because she did not buy Plaintiff WeCare's claims as they were not included in the transferred assets. Moreover, her testimony on this topic would add nothing to Plaintiff WeCare's previous testimony about the purchase price.

As to Mary Buchnik, Defendants assert they want to ask questions about "gathering financial information responsive to document request in th[e] case." Mot. at 2. Ms. Buchnik has not been involved with this lawsuit other than assisting counsel

11

with collecting discovery and has limited knowledge about the case other than through conversations with counsel. *See* Buchnik Decl. ¶ 4. Most of her testimony on this topic would therefore be privileged, and her testimony about the Café's operations would add nothing to what WeCare has already testified about.

Finally, Defendants' contention that the "witnesses offered no facts showing undue burden or incapacity to appear at the noticed location" is inaccurate. *See* Mot at 2; *see e.g.*, Doc No. 1-8 at 3 ("Every deposition taken in this case to date has been at a location chosen by the witnesses . . . There is no legitimate reason for your sudden demand to dictate the locations for the most unnecessary depositions to date. . . . [Y]ou are imposing an undue burden and hardship on Anna and Mary, to require them to likely travel over two-hours for just a short deposition and transforming what should be a moderate inconvenience into an all-day commitment that would require them to take most of the day off.").

## LEGAL STANDARDS

Although Fed. R. Civ. P. 45(g) provides that "[t]he court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it," *id.*, "such a drastic remedy should be exercised with caution, and is only proper upon a showing of bad faith." *Snyder v. Dietz & Watson, Inc.*, 2013 WL 12155425, at *1 (D.N.J. Jan. 30, 2013).

12

As one of Defendants' own authorities explains: "The advisory committee notes to Rule 45 state, '[i]n civil litigation, it would be rare for a court to use contempt sanctions without first ordering compliance with a subpoena.'" *HI.Q, Inc. v. ZeetoGroup, LLC*, 2022 WL 17345784, at *14 (S.D. Cal. Nov. 29, 2022).

A court may also transfer subpoena-related disputes because either the local non-party subject to the subpoena consents or if "exceptional circumstances" exist. *See* Fed. R. Civ. P. 45(f). These include "avoid[ing] disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion." Fed. R. Civ. P. 45 Advisory Committee's Notes to 2013 Amendment.

In evaluating a subpoena, "[t]he court 'must limit the extent of discovery' where it is duplicative, where it can be obtained from another source that is 'more convenient, less burdensome, or less expensive,' where the party seeking discovery has had ample opportunity to obtain the discovery, or where the burden or expense outweighs any perceived benefit of the discovery." *Avago Techs. U.S., Inc. v. IPTronics Inc.*, 309 F.R.D. 294, 297 (E.D. PA. 2015) (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii)). These considerations apply with extra force "in a situation involving discovery sought from a non-party," and "[b]roader restrictions may be necessary to prevent a non-party from suffering harassment or inconvenience." *Id.*

13

Further, Fed. R. Civ. P. 45(d)(1) explicitly requires "[a] party or attorney responsible for issuing and serving a subpoena [to] take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." "The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id*.

## ARGUMENT

### I.  The Non-Party Witnesses Acted Reasonably to Comply with the Subpoena and Have Good Cause to Excuse Any Noncompliance

The non-party witnesses took reasonable steps to comply with the subpoena by offering depositions at a convenient location or remotely. They also reasonably understood the December 6 deposition subpoenas to be no longer operative after Judge Scanlon instructed them on December 4 to make further efforts to "work out" their disagreements. The witnesses' understanding was especially reasonable given Defendants' own statements at the hearing that they no longer sought to depose the two non-parties and the one party-witness on the same date, as noticed. *See* Ex. C at 32:16-19 (Defense counsel: "…we're not going to stack all three [witnesses] in the same day then and we can just have a normal deposition time.").

Even if these efforts were not sufficient to show reasonable compliance, there is certainly a good-faith "adequate excuse" for any non-compliance. Fed. R. Civ. P.

14

45(g). Given the events leading up to and on December 4, Plaintiffs reasonably believed they did not need to file a motion to quash here before December 6. *See Pennsylvania by Shapiro v. Think Fin., LLC*, 2018 WL 4635750, at *7 (E.D. Pa. Sept. 26, 2018) (explaining that "Rule 26(c)(1) itself contemplates that a non-party may seek judicial relief on matters relating to a deposition in either the court where the action is pending or in the court for the district where the deposition will be taken" and that "Rule 45(d) is not intended to diminish rights conferred by Rule 26-37 or any other authority") (quotations and citations omitted).

This is nothing like the circumstances upon which Defendants' authorities rely, where witnesses (a) no-showed without warning or explanation, causing the other side to incur travel expenses for nothing, *see Garcia v. Winters*, 2023 WL 5644655, at *1–2 (E.D. Pa. Aug. 31, 2023); *Feltman v. Granite State Ins. Co.*, 2008 WL 630282, at *1 (Bankr. D.N.J. Mar. 5, 2008); (b) refused to appear for a deposition at all, albeit where the court still denied enforcement of the subpoena, *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 239 (S.D.N.Y. 2002); or (c) made no attempt whatsoever to bring these issues to judicial attention, *In re Coan*, 2007 WL 128010, at *6 (N.D. Cal. Jan. 12, 2007).

Here by contrast, the non-party witnesses timely raised this to Judge Scanlon and sought to avoid unnecessary motion practice in multiple courts. It is Defendants who acted in bad faith by ignoring Judge Scanlon's instruction to try to work out

15

deposition dates, making no effort to accommodate the witnesses' concerns about burden, and filing this motion seeking to avoid Judge Scanlon's rejection of their arguments about remote depositions and conflicts of interest.

## II.    The Court Should Transfer the Motion Back to Judge Scanlon

In any event, the Court should transfer this action to the Eastern District of New York, which is already familiar with the issue in dispute. Fed. R. Civ. P. 45(f) provides that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Both grounds independently favor a transfer here.

First, the witnesses consent to transfer, which alone is sufficient. *See PharmaCare U.S., Inc. v. Season 4, LLC*, 2024 WL 2301407, at *3 (D.N.J. May 21, 2024) (ordering transfer of subpoena over objection of movant because local non-party "consents to the transfer . . . to the issuing court, and because Rule 45(f) unambiguously permits this Court to transfer the motion in light of that consent."); *see also Winston & Strawn LLP v. Janssen Prods., L.P.*, 2022 WL 3359564, at *1 (S.D.N.Y. Aug. 12, 2022) ("Respondents' arguments against transfer are meritless. . . . where the local nonparty has specifically requested a transfer."); *Hall v. Marriott Int'l Inc.*, 2021 WL 3129598, at *2 (N.D. Cal. July 23, 2021) (same); *San Juan Cable LLC v. DISH Network LLC*, 2015 WL 500631, at *1 (D. Colo. Jan. 23, 2015) (same).

16

That the non-parties' consent alone warrants transfer is consistent with the reasoning behind Rule 45's place of compliance requirements, which is to minimize the burden on the non-party witness. The advisory committee notes state that "[t]he prime concern" in assessing a motion to transfer is "avoiding burdens on local nonparties subject to subpoenas." *See* Fed. R. Civ. P. 45 Advisory Committee's Notes to 2013 Amendment; *see also Meijer Inc. v. Ranbaxy Inc.*, 2017 WL 2591937, at *1 (E.D. Pa. June 15, 2017) ("The prime concern should be avoiding burdens on local nonparties subject to subpoenas.").

Here, the GiftRocket Defendants have turned the Rule on its head and are using it to generate needless and duplicative litigation, inconvenience the local non-parties, and evade Judge Scanlon's orders. On December 11, 2024, Plaintiffs' counsel asked the GiftRocket Defendants if they would consent to transfer, but they refused without explanation. *See* Dec. 11, 2024 Emails, Janove Decl. Ex. F.  There is no legitimate reason for Defendants to burden this Court with a dispute that could be easily resolved by Judge Scanlon. The Court should not countenance this forum shopping and vexatious litigation strategy.

 "Exceptional circumstances" under Fed. R. Civ. P. 45(f) also warrant transfer because "[t]he specific situation contemplated by the [advisory] committee is the situation here:" Judge Scanlon "'has already ruled on issues presented by' the motion … and the scope of that ruling, whatever it may be, appears to have significant

17

implications for the resolution of the motion." *Green v. Cosby*, 216 F. Supp. 3d 560, 565 (E.D. Pa. 2016). Moreover, given that on December 4 Judge Scanlon already rejected Defendants' arguments regarding conflicts of interests and remote depositions, transfer is warranted because the relief Defendants request here could result in inconsistent orders. *See United States ex rel. Simpson v. Bayer Corp.*, 2016 WL 7239892, at *2 (E.D. Pa. Dec. 15, 2016) ("Courts have routinely found exceptional circumstances that warrant transfer when there is a risk that the courts will enter orders inconsistent with those entered by the judge presiding over the case."); *see also Pandora Media, LLC v. Word Collections, Inc.*, 2023 WL 9378653, at *1 (S.D.N.Y. Oct. 5, 2023) (granting motion to transfer because it would "be more efficient" if the magistrate judge in the underlying litigation resolved the subpoena because the judge "is already familiar with not only this litigation, but with this nonparty and this subpoena").

Accordingly, the non-party witnesses respectfully request that this Court transfer this action.

### III.    In the Alternative, the Court Should Quash the Subpoenas

Fed. R. Civ. P. 45(d)(3)(A)(iv) provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." The Court should quash the subpoenas.

## A. The Non-Party Witnesses' Request to Quash is Timely

The non-parties' combined opposition to Defendants' motion to compel with this cross-motion to quash is timely. They timely raised their objections to Judge Scanlon. They reasonably believed Defendants' statements at the December 4 hearing that the depositions would be rescheduled and expected the GiftRocket Defendants to follow Judge Scanlon's orders on December 4 and attempt to work out a negotiated solution. The non-parties cannot be faulted for failing to anticipate that the GiftRocket Defendants would ignore Judge Scanlon's orders, make no effort to work things out, and claim the witnesses should have appeared at December 6 depositions that Defendants had just told Judge Scanlon would be rescheduled for separate dates.

Even if the Court believes the motion should have been filed here before December 6 notwithstanding the above, there is "[g]ood cause or other circumstances" that "excuse an untimely motion." *See In re Keebaugh*, 2019 WL 5802703, at *3 (E.D. Pa. Nov. 6, 2019) (collecting cases). When "the delay in filing a motion to quash resulted from attempts to negotiate and resolve the dispute, courts may excuse untimeliness." *Id*. That is because "[t]o hold otherwise would discourage parties from attempting to resolve disputes before seeking judicial intervention." *Id*.

Thus, the non-party witnesses' request to quash the subpoenas is timely, or any untimeliness should be excused.

### B. The Subpoenas Should Not Be Enforced

The subpoenas seek testimony that has little, if any, relevance, and impose an undue burden. *See Avago Techs. U.S., Inc v. IPtronics Inc*, 309 F.R.D. 294, 297 (E.D. Pa. 2015) (observing that the restrictions on discovery under Fed. R. Civ. P. 26 apply "particularly so in a situation involving discovery sought from a non-party."). Moreover, Fed. R. Civ. P. 45(d)(1) explicitly charges that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

Plaintiff WeCare RG, Inc. did not consent to the GiftRocket Defendants' attempts to falsely sell "gift cards" to its business, it was harmed by Defendants' unauthorized use of its name and business information, and it retained its claim and has standing to serve as a class representative. These are the core issues, and the non-party witnesses would add nothing but unnecessary and tangential commentary to what WeCare has already testified.

As to Anna Nukhbalaieva, she has never had any interest or intention of buying WeCare's litigation claims or becoming involved in this litigation. Nukhbalaieva Decl. ¶ 11. Her deposition testimony would simply corroborate the testimony already given by Mr. Kalikhman, an owner of WeCare in both his personal capacity and as a 30(b)(6) witness, that all parties to the APA clearly understood and agreed that the litigation claims would be retained by WeCare. *See Avago Techs.,*

309 F.R.D. 294 at 297 (noting a subpoena could be quashed where the discovery sought "can be obtained from another source that is 'more convenient, less burdensome, or less expensive'") (quoting Fed. R. Civ. P. 26(b)(2)(C)).

There is no disputed issue that needs to be explored; Defendants' interpretation of the agreement is completely irrelevant. Unsurprisingly, Defendants do not cite any authority where a court found that two parties' shared understanding of a contract's meaning could be overridden by their self-interested alternate interpretation of a third-party that had nothing to do with the agreement. Defendants have all relevant information that is in Ms. Nukhbalaieva's possession; there is no reason to burden her with the lengthy in-person deposition. *See Frank v. Honeywell Int'l Inc.*, 2015 WL 4770965, at *5 (E.D. Pa. Aug. 13, 2015) (quashing deposition subpoena, because although the deposition sought "relevant" information, the court "is not persuaded that [the party] *needs* the discovery it seeks") (emphasis in original). And, once again, Judge Scanlon rejected their claim that a supposed "conflict of interest" is a reason to require this deposition to be in person. There is no conflict. *See* Nukhbalaieva Decl. ¶¶ 7–14.

As to Mary Buchnik, Defendants noticed her subpoena so they could ask her about "gathering financial information responsive to document requests in th[e] case." Mot. at 2. Any such testimony is duplicative and unnecessary. WeCare already provided Rule 30(b)(6) testimony concerning document collection and has

produced financial documents the GiftRocket Defendants have requested in this case (as well as testimony regarding WeCare's operations and its role as a class representative in the underlying case). Ms. Buchnik's involvement with this lawsuit is minimal. Most of her knowledge about the case is from conversations with counsel. *See* Buchnik Decl. ¶ 4. Accordingly, requiring a non-party to spend a day traveling to and from a deposition solely to testify on this topic—especially when much of the questioning would involve privileged communications with counsel with respect to discovery obligations or would just be duplicative of Mr. Kalikhman's testimony—is unduly burdensome. *See* Buchnik Decl. ¶ 5.

The depositions requested here stand in stark contrast to the depositions at issue in Defendants' cited authorities, where witnesses were expected to give important and non-duplicative testimony. *See HI.Q, Inc. v. ZeetoGroup, LLC*, 2022 WL 17345784, at *6 (S.D. Cal. Nov. 29, 2022) (the non-party respondent in that case was potentially in possession of both documents and knowledge that would have served as a "complete defense" to plaintiff's claims); *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 57892, at *1 (S.D.N.Y. Jan. 4, 2013) (non-party was attorney of defendant that had been engaging in "diversionary and dilatory motion and discovery practices, all of which are aimed at frustrating any efforts . . . to enforce the judgment").

Finally, the fact that Defendants rejected the opportunity to depose these non-parties in favor of a heated battle to force the witnesses to appear in person at an inconvenient location is compelling evidence that Defendants do not anticipate relevant testimony. They instead noticed these depositions for the improper purpose of harassing witnesses and for leverage against Plaintiffs. Defendants have remotely taken multiple depositions of greater importance. They have never articulated why Ms. Buchnik must be deposed in person downtown, and Judge Scanlon already rejected their baseless excuse for insisting that Ms. Nukhbalaieva must be deposed in a "neutral" location of Defendants' choice. Defendants' clear disinterest in obtaining the supposedly relevant information when it was offered confirms that the testimony will have little, if any, relevance, making any burden undue.

Defendants' authorities also do not provide any rationale that these depositions must be in-person depositions rather than remotely to avoid an undue burden. Their authorities simply discuss how to properly measure distance to comply with Rule 45's 100 mile limit in cases either long predating the existence of remote depositions, *see Schwartz v. Marriott Hotel Servs., Inc.*, 186 F. Supp. 2d 245, 251 (E.D.N.Y. 2002) (in denying a motion to transfer, simply observed that "four allegedly non-party witnesses are subject to this Court's subpoena power"); *Palazzo ex rel. Delmage v. Corio*, 204 F.R.D. 639, 639 (E.D.N.Y. 1998); *James v. Runyon*, 1993 WL 173468, at *2–3 & n.6 (N.D.N.Y. May 17, 1993)), or are decisions

23

involving motions to transfer venue and a brief discussion about whether non-party witnesses would hypothetically be subject to the transferee court's subpoena power, *Gordon v. Houghton Mifflin Harcourt Pub. Co.*, 2015 WL 3871788, at *7 (E.D. Pa. June 23, 2015); *Melbourn v. Wal-Mart Stores, Inc.*, 2020 WL 1470850, at *3 (E.D. Pa. Mar. 26, 2020).

### C. The Court Should Order Defendants to Pay for this Opposition

The Court should also award reasonable attorney's fees and costs in preparing this filing because of their failure to abide by Fed. R. Civ. P. 45(d)(1)'s explicit instructions that they "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *See id.* ("The court for the district where compliance is required ***must*** enforce this duty [to avoid imposing undue burden or expense] and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.") (emphasis added).

Defendants' entire motion rests on the flawed premise that the depositions are irrefutably convenient because the noticed location is approximately 25 miles from where the witnesses prefer to be deposed. Defendants simply cannot avoid the preferences of the witnesses, their status as non-parties, the minimal relevance of the testimony at issue, and Defendants' lack of any legitimate explanation for their sudden demand for in-person depositions when remote depositions were previously

24

acceptable. No authority supports their frivolous position, which flies in the face of both the plain language of Rule 45(d), as well as the spirit of cooperation and efficiency that animates the Federal Rules of Civil Procedure.

Defendants have also abused Rule 45's place of compliance requirements—which are designed to protect witnesses from being forced to seek relief in far-away proceedings—in a transparent attempt to evade Judge Scanlon's rulings. And while the GiftRocket Defendants cite to 28 U.S.C. § 1927 to claim vexatious litigation conduct, that only serves as a basis to award fees against them here. They have unnecessarily multiplied the proceedings by ignoring Judge Scanlon's December 4 rulings. They did not even reaching out to counsel to attempt to resolve this dispute as Judge Scanlon instructed, all because they want these issues be resolved by a new court rather than one already familiar with the matter before filing their motion. *See* 28 U.S.C. § 1927.

## CONCLUSION

Accordingly, the non-parties request that, to the extent this Court does not transfer this action to the magistrate judge presiding over discovery in the underlying litigation, this Court should (a) deny the GiftRocket Defendants' Motion to Compel in its entirety; (b) quash the non-party subpoenas for the reasons stated above; and (c) order Defendants to pay attorney's fees and costs caused by their unnecessary and meritless motion to compel.

25

Respectfully submitted,

Date: December 12, 2024                    By: */s/ Raphael Janove*
                                           **JANOVE PLLC**
                                           Raphael Janove
                                           1617 John F. Kennedy Blvd., 20th Floor
                                           Philadelphia, PA 19103
                                           raphael@janove.law
                                           Telephone: (215) 267-0100

## LOCAL RULE 26.1(F) CERTIFICATION

I HEREBY CERTIFY that I attempted to obtain the GiftRocket Defendants'

consent to transfer enforcement of the subpoena to the underlying court. The

GiftRocket Defendants did not provide consent.

                         By: */s/ Raphael Janove*
                              Raphael Janove

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 12, 2024, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system.  Notice of this

filing will be sent to counsel of record by operation of the Court's electronic filing

system.

                         By: */s/ Raphael Janove*
                              Raphael Janove